FILED

Lawrence P. Ebiner (CA State Bar No. 122293)
E-mail: larry.ebiner@bryancave.com
Jonathan G. Fetterly (CA State Bar No. 228612)
Email: jon.fetterly@bryancave.com
Patrick J. Hagan (CA State Bar No. 266237)
E-mail: patrick.hagan@bryancave.com
BRYAN CAVE, LLP
800 West Olympic Blvd. 4th Floor
Los Angeles, CA 90015
Telephone: 213-572-4300
Facsmile: 213-572-4400

2012 JAN 24  PM 2: 16

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY_____

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| JLG INDUSTRIES, INC., a Pennsylvania corporation; and ACCESS FINANCIAL SOLUTIONS, INC., a Maryland corporation,<br><br>              Plaintiffs,<br><br>     v.<br><br>BERGEN MICHAEL DAVIS, an individual; SHAUN FLANAGAN; an individual; and DOES 1 - 25, inclusive,<br><br>              Defendants. | CASE NO.:   **SACV12-00109 CJC (ANx)**<br><br>**COMPLAINT FOR BREACH OF GUARANTY** |

1  Plaintiffs JLG Industries, Inc. ("**JLG**") and Access Financial Solutions, Inc.
2  ("**Access**") (collectively, "Plaintiffs") bring this action against Defendants Bergen
3  Michael Davis, Shaun Flanagan, and Does 1 through 25 for breach of several
4  guarantees as follows:

<div align="center">I.    PARTIES</div>

6      1.    Plaintiff JLG is a Pennsylvania corporation with its principal place of
7  business in McConnellsburg, Pennsylvania.  JLG is a leading manufacturer of aerial
8  work platforms and other access equipment.

9      2.    Plaintiff Access is a Maryland corporation with its principal place of
10  business in Hagerstown, Maryland.  Access is a wholly-owned subsidiary of JLG and
11  provides equipment financing.

12      3.    Defendant Bergen Michael Davis ("**Davis**") is an individual residing in
13  Riverside County, California.

14      4.    Defendant Shaun Flanagan ("**Flanagan**") is an individual residing in
15  Orange County, California.

16      5.    Plaintiffs are informed and believe and, based thereon, allege that
17  Defendants were at all relevant times members of, and engaged in, a joint venture,
18  partnership, association or common enterprise, and acting within the course and
19  scope of, and in pursuance of, said joint venture, partnership, association or common
20  enterprise.  Furthermore, on information and belief, at all times relevant hereto
21  Defendants conspired with, aided and abetted, contributed to, and/or acted as agents
22  or employees of each other with respect to, the commission of the acts alleged.

23      6.    Plaintiffs are ignorant of the true names and capacities of Defendants
24  sued as DOES 1 through 25, inclusively, and therefore sue these Defendants by such
25  fictitious names.  Plaintiffs will amend this Complaint to allege their true names and
26  capacities when ascertained.

27
28

## II.   JURISDICTION AND VENUE

7.   This Court has jurisdiction pursuant to 28 U.S.C. Section 1332 because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different States.

8.   Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(a) because a substantial part of the events or omissions giving rise to the claims occurred in the Central District of California, Southern Division.  In addition, on information and belief, Defendant Flanagan resides in the Central District of California, Southern Division, and Defendants reside in the Central District of California.

## III.   GENERAL ALLEGATIONS

9.   This is an action to enforce several Guarantees (described below). Defendants signed the Guarantees for the purpose of inducing Plaintiffs and others to provide financing to their company, Pacific High Reach and Equipment Services, Inc. ("PHR" or "Debtor").  PHR is located in the County of Orange, and PHR's obligations, which Defendants guaranteed, were entered into in that county.  PHR has defaulted on the underlying obligations and Defendants are now liable under the Guarantees for more than $5,210,952, plus interest, costs of collection, and reasonable attorneys' fees.  Attached as Exhibit 1 is a summary of the amounts PHR owes Plaintiffs and for which Guarantors are responsible under the Guarantees.

**Summary of Case**

10.   PHR was a construction equipment rental company headquartered in Orange, California.  Defendants are or were owners, officers and/or directors of PHR.  PHR is no longer a going concern.

11.   Over the years, Plaintiff JLG sold and/or rented equipment and parts to PHR.

12.   PHR financed the purchase and rental of equipment and parts by means of various financing arrangements and loans ("**Loans**") made by third party lenders,

including General Electric Capital Corporation ("**GE**"), Wells Fargo Equipment Finance, Inc. ("**Wells Fargo**"), U.S. Bancorp Inc. ("**USB**"), De Lage Landen ("**DLL**"), and Plaintiff Access (collectively "**Lenders**").

13.    In connection with these loan transactions, Defendants signed a number of unconditional and irrevocable guarantees by which they guaranteed full and prompt payment, performance and satisfaction of the Loans and the obligations thereunder ("**Lender Guarantees**").

14.    In 2010, Defendants signed two additional guarantees by which they guaranteed full payment, performance and satisfaction of any and all of PHR's obligations and liabilities to Plaintiffs ("**JLG Guarantees**").

15.    During 2011, Lenders assigned to Plaintiff Access all right, title and interest in and to the Loans, the Lender Guarantees, and the underlying agreements. Accordingly, Plaintiffs are now the beneficiaries under both the Lender Guarantees and the JLG Guarantees.

16.    PHR defaulted on its obligations to Plaintiffs by failing to pay all amounts due.  As of May 2011, PHR owed Plaintiffs approximately $14,283,750 million, all of which was due and payable.

17.    On or about May 27, 2011, Debtor PHR filed for Chapter 11 bankruptcy in United States Bankruptcy Court, Central District of California (the "Insolvency Proceeding').  Plaintiffs were listed as creditors.

18.    On or about November 21, 2011, pursuant to a Stipulation And Agreement Regarding Debtor's Sale Of All Or Substantially All Of Its Assets ("Stipulation"), and Order Granting Debtor's Motion For Approval Of Stipulation And Agreement ("Order on Stipulation"), Plaintiffs recovered approximately $9,072,797 in the Insolvency Proceedings, leaving an unpaid balance owing of approximately $5,210,952.  The Stipulation expressly reserved all rights against Defendant Guarantors.  True and correct copies of the Stipulation and Order on Stipulation are attached hereto as Exhibits 2 and 3, respectively.

1    19.    Defendants are liable to Plaintiffs under the JLG Guarantees and the
2    Lender Guarantees for the unpaid balance.

3    **GE Loans**

4    20.    Debtor PHR financed the purchase and rental of equipment and parts
5    through loans from GE ("**GE Loans**").

6    21.    The GE Loans were documented in a number of promissory notes and
7    secured by a Master Security Agreement dated March 3, 2004 ("**GE Master**
8    **Security Agreement"**).  A true and correct copy of the GE Master Security
9    Agreement is attached hereto as Exhibit 4.

10   22.    On or about July 26, 2005, PHR signed a written promissory note in the
11   principal amount of $559,031.60 ("**July 2005 Note**"), under which it promised to pay
12   GE or any subsequent holder the principal balance due plus interest of 7.8%.  As of
13   May 27, 2011, the total amount due and payable under the July 2005 Note, a true and
14   correct copy of which is attached hereto as Exhibit 5 and incorporated herein, was
15   approximately $126,422.

16   23.    On or about November 23, 2005, PHR signed a written promissory note
17   in the principal amount of $340,365.79 ("**November 2005 Note**"), under which it
18   promised to pay GE or any subsequent holder the principal balance due plus interest
19   of 7.8%.  As of May 27, 2011, the total amount due and payable under the November
20   2005 Note, a true and correct copy of which is attached hereto as Exhibit 6 and
21   incorporated herein, was approximately $108,895.

22   24.    On or about August 29, 2006, PHR signed a written promissory note in
23   the principal amount of $507,392.60 ("**August 2006 Note**"), under which it promised
24   to pay GE or any subsequent holder the principal balance due plus interest of 8.43%.
25   As of May 27, 2011, the total amount due and payable under the August 2006 Note, a
26   true and correct copy of which is attached hereto as Exhibit 7 and incorporated
27   herein, was approximately $69,735.

28

25.     On or about July 31, 2007, PHR signed a written promissory note in the principal amount of $480,729.54 ("**July 2007 Note**"), under which it promised to pay GE or any subsequent holder the principal balance due plus interest of 8.19%.  As of May 27, 2011, the total amount due and payable under the July 2007 Note, a true and correct copy of which is attached hereto as Exhibit 8 and incorporated herein, was approximately $453,450.

26.     On or about August 16, 2007, PHR signed a written promissory note in the principal amount of $585,101.57 ("**August 2007 Note**"), under which it promised to pay GE or any subsequent holder the principal balance due plus interest of 8.19%. As of May 27, 2011, the total amount due and payable under the August 2007 Note, a true and correct copy of which is attached hereto as Exhibit 9 and incorporated herein, was approximately $557,843.

27.     On or about May 29, 2009, PHR entered into a written Loan and Security Agreement to refinance approximately $440,386 in debt **("May 2009 Agreement"**), under which it promised to pay GE the principal balance plus interest of $10.45%.  As of May 27, 2011, the total amount due and payable under the May 2009 Agreement, a true and correct copy of which is attached hereto as Exhibit 10 and incorporated herein, was approximately $352,360.

28.     On or about December 30, 2009, PHR signed a written promissory note in the principal amount of $90,219.57 ("**December 2009 Note**."), under which it promised to pay GE or any subsequent holder the principal balance plus interest of $9.95%.  As of May 27, 2011, the total amount due and payable under the December 2009 Note, a true and correct copy of which is attached hereto as Exhibit 11 and incorporated herein, was approximately $101,317.

29.     On or about December 16, 2010, pursuant to a written Assignment ("**GE Assignment**"), GE assigned to Plaintiff Access, and its successors and assigns, all right, title and interest in and to the July 2005 Note, the November 2005 Note, the August 2006 Note, the July 2007 Note, the August 2007 Note, the December  2009

1  Note (collectively "**GE Promissory Notes**"), the May 2009 Agreement, and the GE
2  Master Security Agreement, and all payments due and to become due under the GE
3  Loans.  A true and correct copy of the GE Assignment is attached hereto as Exhibit
4  12 and incorporated herein.

5       30.    PHR defaulted on its obligations under the GE Promissory Notes, the
6  May 2009 Agreement, and the GE Master Security Agreement (collectively "**GE**
7  **Agreements**") by failing to make payments when due.  As of May 27, 2011, the total
8  amount due and payable thereunder was approximately $1,770,026.

9       31.    Pursuant to the Guarantees, Defendants are liable to Plaintiff Access for
10  all amounts due under the GE Loans and GE Agreements.

11  **Wells Fargo and Access Loans**

12       32.    PHR financed the purchase and rental of equipment and parts through
13  loans from Wells Fargo and its predecessor in interest, The CIT Group/Equipment
14  Financing, Inc. ("**CIT**") ("**Wells Fargo Loans**").

15       33.    The Wells Fargo Loans were secured by a Master Security Agreement
16  dated April 7, 2005 with CIT ("**CIT Master Security Agreement**"), a true and
17  correct copy of which is attached hereto as Exhibit 13 and incorporated herein.

18       34.    The CIT Master Security Agreement provides, "This Master Security
19  Agreement provides a set of terms and conditions that the parties hereto intend to be
20  applicable to various loan transactions secured by personal property."  Each such
21  loan and security agreement shall be evidenced by a schedule of indebtedness and
22  collateral ("Schedule") executed by Secured Party and Debtor that explicitly
23  incorporates the provisions of this Master Security Agreement and that sets forth
24  specific terms of that particular loan and security contract."

25       35.    The CIT Master Security Agreement further provides, "Each Schedule
26  shall constitute a complete and separate loan and security agreement."  Paragraph 3
27  of the CIT Master Security Agreement requires Debtor to pay CIT and its successors

28

1   and assigns the amounts set forth on each Schedule at the rate and upon such terms as
2   provided therein.

3          36.    On or about December 10, 2006, the CIT Master Security Agreement
4   was replaced in its entirety by an Amended and Restated Security Agreement ("**CIT**
5   **Amended Security Agreement**").  Paragraph 2.1 of the CIT Amended Security
6   Agreement states, "Debtor has requested Secured Party that Secured Party from time
7   to time make loans or otherwise extend credit ['Advances'] to or on behalf of
8   Debtor."  Pursuant to Paragraphs 2.4 and 2.5 of the CIT Amended Security
9   Agreement, Debtor agreed to repay the Advances with interest.  A true and correct
10  copy of the CIT Amended Security Agreement is attached hereto as Exhibit 14 and
11  incorporated herein.

12         37.    During 2007, Wells Fargo acquired CIT and its various assets and
13  became successor-in-interest as Secured Party under the CIT Amended Security
14  Agreement.  A true and correct copy of the Name Change Amendment amending the
15  Secured Party's name to Wells Fargo is attached hereto as Exhibit 15 and
16  incorporated herein.

17         38.    Between April 7, 2005 and December 21, 2009, Debtor PHR entered a
18  series of thirty-two Schedules to the Wells Fargo Security Agreement, each of which
19  evidenced loans made for the purchase of certain identified equipment.

20         39.    On or about December 21, 2009, Wells Fargo assigned to Plaintiff
21  Access all right, title and interest under the CIT Amended Security Agreement and
22  the Wells Fargo Loans and Schedules thereto, and all proceeds and payments due and
23  to become thereunder ("**Wells Fargo Assignments**").  Attached hereto as Exhibit 16
24  and incorporated herein are true and correct copies of the Wells Fargo Assignments.

25         40.    On or about January 15, 2010, the Wells Fargo Loans were refinanced
26  and consolidated into five new loans, all of which were subject to a Master Lease
27  Agreement with Access dated June 1, 2002 ("**Access Master Lease Agreement**"),
28  and each of which constituted a complete and separate obligation of Debtor pursuant

1  to the Master Lease Schedules described below. A true and correct copy of the
2  Access Master Lease Agreement is attached hereto as Exhibit 17 and incorporated
3  herein.

4      41.    The five new loans that replaced the loans from Wells Fargo and are the
5  subject of this action are as follows:

6          a)    "**Master Lease Schedule 13**" had an initial principal balance of
7  $1,181,530, and an outstanding balance as of May 27, 2011 of approximately
8  $1,378,052. A true and correct copy of Master Lease Schedule 13 is attached hereto
9  as Exhibit 18 and incorporated herein.

10         b)    "**Master Lease Schedule 14**" had an initial principal balance of
11  $105,744, and an outstanding balance as of May 27, 2011 of approximately
12  $124,555. A true and correct copy of Master Lease Schedule 14 is attached hereto as
13  Exhibit 19 and incorporated herein."

14         c)    "**Master Lease Schedule 15**" had an initial principal balance of
15  $1,216,953, and an outstanding balance as of May 27, 2011 of approximately
16  $1,413,471. A true and correct copy of Master Lease Schedule 15 is attached hereto
17  as Exhibit 20 and incorporated herein.

18         d)    "**Master Lease Schedule 16**" had an initial principal balance of
19  $3,026,211, and an outstanding balance as of May 27, 2011 of approximately
20  $3,483,492. A true and correct copy of Master Lease Schedule 16 is attached hereto
21  as Exhibit 21 and incorporated herein.

22         e)    "**Master Lease Schedule 17**" had an initial principal balance of
23  $618,374, and an outstanding balance as of May 27, 2011 of approximately
24  $711,043. A true and correct copy of Master Lease Schedule 17 is attached hereto as
25  Exhibit 22 and incorporated herein.

26      42.    Also on or about January 15, 2010, in connection with the financing of
27  certain "cure payments" that Plaintiffs made on PHR's behalf to a prior lender, PHR
28  entered into "**Master Lease Schedule 18**," which had an initial principal balance of

$252,664, and an outstanding balance as of May 27, 2011 of approximately $280,297. A true and correct copy of Master Lease Schedule 18 is attached hereto as Exhibit 23 and incorporated herein.

43.    Also on or about January 15, 2010, in connection with a loan of $555,126 in re-rental and parts billings, PHR entered into "**Master Lease Schedule 19**," which had an initial principal balance of $555,126, and an outstanding balance as of May 27, 2001 of approximately $619,079. A true and correct copy of Master Lease Schedule 19 is attached hereto as Exhibit 24 and incorporated herein.

44.    PHR defaulted on its obligations under the foregoing seven schedules (collectively "**Access Master Lease Schedules**") by failing to make payments when due. As of May 27, 2011, the total amount due and payable thereunder was approximately $8,009,993.

45.    Pursuant to the Guarantees, Defendants are liable to Plaintiff Access for all amounts currently due under Wells Fargo Loans and the Access Master Lease Schedules.

**USB Loans**

46.    PHR financed the purchase and rental of equipment and parts through loans from USB ("**USB Loans**").

47.    On or about October 20, 2007, USB and PHR entered into a Master Loan Agreement ("**USB Master Loan Agreement**"). Paragraph 1.1 of the USB Master Loan Agreement provides that PHR "promises to pay to [USB] any amounts set forth on any Schedule to Master Loan Agreement hereunder." A true and correct copy of the USB Master Loan Agreement is attached hereto as Exhibit 25 and incorporated herein.

48.    The USB Loans are documented by three Schedules (collectively "**USB Schedules**") pursuant to the USB Master Loan Agreement.

a)    **USB Schedule 1,** dated October 30, 2007, had an initial principal amount of $922,245.28, and an outstanding balance as of May 27, 2011 of

1  approximately $599,605.  A true and correct copy of the USB Schedule 1 is attached
2  hereto as Exhibit 26 and incorporated herein.

3  b)  **USB Schedule 2,** dated March 13, 2008, had an initial principal
4  amount of $1,556,139.85, and an outstanding balance as of May 27, 2011 of
5  approximately $1,049,884.  A true and correct copy of the USB Schedule 2 is
6  attached hereto as Exhibit 27 and incorporated herein.

7  c)  **USB Schedule 3,** dated May 30, 2008, had an initial principal
8  amount of $1,202,959.28, and an outstanding balance as of May 27, 2011 of
9  approximately $843,378.  A true and correct copy of the USB Schedule 3 is attached
10  hereto as Exhibit 28 and incorporated herein.

11  49.  On or about December 21, 2009, PHR entered into an Amendment
12  Agreement with respect to the USB Master Loan Agreement and the various
13  Schedules ("**2009 USB Loan Amendment**").  The 2009 USB Loan Amendment
14  restructured the monthly payments while ratifying and confirming all provisions in
15  the USB Master Loan Agreement that were not inconsistent with the 2009 USB Loan
16  Amendment.  A true and correct copy of the 2009 USB Loan Amendment is attached
17  hereto as Exhibit 29 and incorporated herein.

18  50.  On or about September 28, 2010, USB and PHR entered into an
19  Amendment Agreement that restructured for a second time the monthly payments
20  under the USB Schedules ("**2010 USB Loan Amendment**").  The 2010 USB Loan
21  Amendment provided, "Additional charges, late fees, collection fees and legal fees
22  shall be billed as they arise."  A true and correct copy of the 2010 USB Loan
23  Amendment is attached hereto as Exhibit 30 and incorporated herein.

24  51.  On or about May 9, 2011, USB sold, assigned and transferred to
25  Plaintiff Access, pursuant to a written Assignment ("**USB Assignment**"), all rights,
26  title, and interest in and to the USB Master Loan Agreement, as amended, and the
27  USB Schedules and guarantees related thereto.  A true and correct copy of the USB
28  Assignment is attached hereto as Exhibit 31 and incorporated herein.

**COMPLAINT FOR BREACH OF GUARANTY**

52.     On or about May 20, 2011, USB sent PHR a Notice, Acknowledgement and Agreement providing notice of the USB Assignment. A true and correct copy of the notice is attached hereto as Exhibit 32 and incorporated herein.

53.     PHR defaulted on its obligations under the USB Master Loan Agreement, as amended, and the USB Schedules by failing to make payments when due. As of May 27, 2011, the total amount due and payable thereunder was approximately $2,492,069.

54.     Pursuant to the Guarantees, Defendants are liable to Plaintiff Access for all amounts currently due and payable under the USB Master Loan Agreement, as amended, and the USB Schedules.

**DLL Loans**

55.     PHR financed the purchase of parts and the purchase and rental of equipment through loans from DLL ("**DLL Loans**").

56.     On or about June 12, 2004, PHR entered into a written Agreement for Inventory Financing ("**DLL Inventory Agreement**") pursuant to which DLL agreed to finance certain equipment and PHR agreed to pay in full the balance owed to DLL when due. A true and correct copy of the DLL Inventory Agreement is attached hereto as Exhibit 33 and incorporated herein.

57.     On or about July 7, 2011, DLL entered into an Assignment Agreement with Plaintiff Access ("**DLL Assignment Agreement**") under which it agreed to assign, transfer and convey to Access all its right, title and interest in and two the DLL Inventory Agreement. A true and correct copy of the DLL Assignment Agreement is attached hereto as Exhibit 34 and incorporated herein.

58.     On or about July 7, 2011, DLL provided a written notice of assignment to PHR ("**DLL Notice of Assignment**") stating that DLL "has assigned and transferred all of its rights, title and interest in the [DLL Inventory Agreement], including, but not limited to (i) all amounts due thereunder, (ii) any rights arising under any guaranty of the obligations thereunder, and (iii) the underlying Equipment

1  subject thereto, to Access Financial Solutions, Inc." A true and correct copy of the
2  DLL Notice of Assignment is attached hereto as Exhibit 35 and incorporated herein.

3       59.    PHR defaulted on its obligations under the DLL Inventory Agreement
4  by failing to pay the amounts due. As of May 27, 2011, the total amount due
5  thereunder was approximately $1,434,560.

6       60.    Pursuant to the Guarantees, Defendants are liable to Plaintiff Access for
7  all amounts currently due under the DLL Inventory Agreement.

8  **JLG Leased Equipment**

9       61.    From January 2010 through May 2011 PHR leased parts and equipment
10 from JLG, subject to a Security Agreement (Equipment and Inventory) dated March
11 23, 2004, a true and correct copy of which is attached hereto as Exhibit 36.

12      62.    In connection with the lease of such parts and equipment, JLG issued a
13 series of invoices which PHR agreed to pay. A true and correct list of invoices is
14 attached hereto as Exhibit 37.

15      63.    PHR defaulted on its obligation to pay the amounts due for the leased
16 parts and equipment. As of May 27, 2011, the total amount owing was $577,101.

17      64.    Pursuant to the Guarantees, Defendants are liable to Plaintiffs for all
18 amounts currently due and payable relative to the parts and equipment.

19 **Davis Guarantees**

20      65.    In connection with the foregoing Loans and related transactions,
21 Defendants signed a number of Guarantees.

22      66.    On or about March 3, 2010, Defendant Davis entered into a written
23 Guaranty ("**Davis - JLG Guaranty**") in favor of JLG "and such corporations or
24 other entities as may from time to time be its direct or indirect subsidiaries ('JLG
25 Parties')." A true and correct copy of the Davis - JLG Guaranty is attached hereto as
26 Exhibit 38 and incorporated herein.

27      67.    The Davis - JLG Guaranty states, "Guarantor hereby unconditionally
28 and irrevocably guarantees to each of the JLG Parties, and shall be responsible to

1 each of the JLG Parties for, the full and prompt payment, performance and

2 satisfaction by Obligor of each and every one of its obligation to any JLG Party,

3 whether now in existence or arising on or after the date of this Guaranty, whether

4 absolute or contingent, and whether secured or unsecured, together with all fees and

5 charges of whatsoever kind and nature arising therefrom or relating thereto."

6      68.    The Davis - JLG Guaranty states: "It is specifically understood and

7 agreed that . . . the obligation of Guarantor hereunder is not conditional or

8 contingent, but rather absolute and immediate upon any amount due from Obligor not

9 being paid, or any obligation of Obligor not performed, when due, and that Guarantor

10 shall make any payments and undertake the performance of any obligations due to

11 the JLG Parties hereunder immediately and without delay."

12     69.    On or about September 14, 2010, Davis entered into a written Guaranty

13 with USB ("**Davis – USB Guaranty**"), a true and correct copy of which is attached

14 hereto as Exhibit 39 and incorporated herein.

15     70.    Paragraph 1 of the Davis - USB Guaranty states in part that Davis as

16 Guarantor "GUARANTEES THE FULL, PROMPT, COMPLETE AND FINAL

17 PAYMENT AND PERFORMANCE OF ALL THE OBLIGOR'S OBLIGATIONS

18 PURSUANT TO THE [LOAN] AGREEMENTS OR IN ANY WAY ARISING

19 THEREFROM AND ANY AND ALL OTHER OBLIGATIONS AND

20 LIABILITIES OF OBLIGOR TO CREDITOR, WHETHER NOW IN EXISTENCE

21 OR ARISING HEREAFTER, DIRECT OR INDIRECT, CONTINGENT OR

22 ABSOLUTE, MATURED OR UNMATURED, SECURED OR UNSECURED,

23 AND HOWEVER CONTRACTED OR ARISING ['OBLIGATIONS']." (Emphasis

24 in original.)

25     71.    Paragraph 2 of the Davis - USB Guaranty states in part, "Guarantor

26 hereby promises to pay Creditor when due, on demand, all indebtedness of any kind

27 or nature emanating from the Agreements (including, without limitation, if an event

28 of default shall occur under the Agreements, payment on demand of all unpaid sums

1  to become due under the defaulted Agreements for the entire term thereof), whether
2  now or hereafter arising; and Guarantor agrees to indemnity and hold Creditor
3  harmless from and against any and all losses, liabilities and costs caused by or arising
4  from (in any way, directly or indirectly) any failure of Obligor to fully, promptly and
5  completely satisfy the Obligations."

6      72.    Paragraph 5 of the Davis - USB Guaranty states in part, "This Guaranty
7  is unlimited, absolute, irrevocable and unconditional and shall continue in full force
8  and effect until all the Obligations have been fully, completely and finally satisfied
9  and paid."

10      73.    As a result of the USB Assignment, Plaintiff Access is Creditor and
11  beneficiary under the Davis - USB Guaranty.

12      74.    On or about October 15, 2010, Davis entered into a written Guaranty
13  with DLL (the "**Davis – DLL Guaranty**"), a true and correct copy of which is
14  attached as Exhibit 40 and incorporated herein.

15      75.    Under the Davis – DLL Guaranty, Davis as "Guarantor hereby
16  unconditionally guarantees to Beneficiary and its successors and assigns (i) the due
17  and punctual payment, to Beneficiary when due of all payment obligations and all
18  other amounts coming due under the Agreement, including, without limitation, all
19  indemnification payment, whether as a result of acceleration, maturity or otherwise,
20  (ii) the full, prompt and unconditional performance of every obligation to be
21  performed by Customer under the Agreement, and (iii) all expenses of obtaining or
22  endeavoring to obtain payment or performance thereof or security therefor, or of
23  enforcing this Guaranty, including attorneys' fees and other legal expenses."

24      76.    Paragraph 2 of the Davis – DLL Guaranty states in part, "Guarantor
25  hereby agrees that if Customer [PHR] shall fail to pay any amount due under the
26  Agreement when and as the same shall be due and payable, or fails to perform any
27  obligation under the Agreement in a timely manner, Guarantor will cause such
28  amount to be paid when and as the same shall be due and payable or cause such

1  performance to be rendered in a timely manner in accordance with the terms of the
2  Agreement, as if the same were paid or performed by Customer."

3      77.    Paragraph 8.2 of the Davis –DLL Guaranty states in part, "Guarantor
4  acknowledges and agrees that Beneficiary may sell and transfer its ownership of the
5  Equipment and its right and interest in the Agreement, and this Guaranty shall inure
6  to the benefit of such successors in title to the equipment and Agreement."

7      78.    As a result of the DLL Assignment Agreement, Plaintiff Access is
8  Beneficiary under the Davis – DLL Guaranty.

9      79.    The Davis – JLG Guaranty, the Davis – USB Guaranty, and the Davis –
10 DLL Guaranty are collectively referred to as the "**Davis Guarantees**."

11 **Flanagan Guaranty**

12     80.    On or about March 3, 2010, Defendant Flanagan entered into a written
13 Guaranty ("**Flanagan Guaranty**) in favor of JLG "and such corporations or other
14 entities as may from time to time be its direct or indirect subsidiaries ('JLG Parties')"
15 A true and correct copy of the Flanagan Guaranty is attached hereto as Exhibit 41
16 and incorporated herein.

17     81.    The Flanagan Guaranty states, "Guarantor hereby unconditionally and
18 irrevocably guarantees to each of the JLG Parties, and shall be responsible to each of
19 the JLG Parties for, the full and prompt payment, performance and satisfaction by
20 Obligor of each and every one of its obligation to any JLG Party, whether now in
21 existence or arising on or after the date of this Guaranty, whether absolute or
22 contingent, and whether secured or unsecured, together with all fees and charges of
23 whatsoever kind and nature arising therefrom or relating thereto."

24     82.    The Flanagan Guaranty states: "It is specifically understood and agreed
25 that . . . the obligation of Guarantor hereunder is not conditional or contingent, but
26 rather absolute and immediate upon any amount due from Obligor not being paid, or
27 any obligation of Obligor not performed, when due, and that Guarantor shall make

28

1 | any payments and undertake the performance of any obligations due to the JLG

2 | Parties hereunder immediately and without delay."

3 | **Notice of Default**

4 | 83.    On or about February 23, 2011, JLG served notice of default.

5 | 84.    As Guarantor under the Davis Guarantees, Davis is jointly and severally

6 | responsible for all amounts not paid by PHR as described herein, including all fees

7 | and costs related thereto.

8 | 85.    As Guarantor under the Flanagan Guaranty, Flanagan is jointly and

9 | severally liable for all amounts not paid by PHR as described herein, including all

10 | fees and costs related thereto.

11 | <center>**FIRST CAUSE OF ACTION**</center>

12 | <center>**(Breach of JLG Guaranty**</center>

13 | <center>**By Plaintiff Access Against Defendant Davis)**</center>

14 | 86.    The allegations of Paragraph 1 through 85 are incorporated by this

15 | reference.

16 | 87.    Pursuant to the Davis – JLG Guaranty, Defendant Davis unconditionally

17 | and irrevocably guaranteed the full and prompt payment, performance and

18 | satisfaction of each and every obligation and liability owing by PHR [also sometimes

19 | referred to as "**Obligor**"] to Plaintiff Access.

20 | 88.    The Davis - JLG Guaranty states, "Guarantor hereby unconditionally

21 | and irrevocably guarantees to each of the JLG Parties, and shall be responsible to

22 | each of the JLG Parties for, the full and prompt payment, performance and

23 | satisfaction by Obligor of each and every one of its obligation to any JLG Party,

24 | whether now in existence or arising on or after the date of this Guaranty, whether

25 | absolute or contingent, and whether secured or unsecured, together with all fees and

26 | charges of whatsoever kind and nature arising therefrom or relating thereto."

27 | 89.    The Davis - JLG Guaranty states: "It is specifically understood and

28 | agreed that . . . the obligation of Guarantor hereunder is not conditional or

1 | contingent, but rather absolute and immediate upon any amount due from Obligor not
2 | being paid, or any obligation of Obligor not performed, when due, and that Guarantor
3 | shall make any payments and undertake the performance of any obligations due to
4 | the JLG Parties hereunder immediately and without delay."

5 | 90. Obligor PHR has defaulted on its payment obligations under the GE
6 | Loans and GE Agreements; the Wells Fargo Loans, the Access Master Lease
7 | Agreement, and the Access Master Lease Schedules; the USB Loans, the USB
8 | Master Loan Agreement, as amended, and the USB Schedules; and the DLL Loans
9 | and DLL Inventory Agreement.

10 | 91. Defendant Davis has breached the Davis – JLG Guaranty by failing and
11 | refusing to pay the amounts due under the GE Loans and GE Agreements; the Wells
12 | Fargo Loans, the Access Master Lease Agreement, and the Access Master Lease
13 | Schedules; the USB Loans, the USB Master Loan Agreement, as amended, and the
14 | USB Schedules; and the DLL Loans and DLL Inventory Agreement.

15 | 92. Plaintiff Access has fully performed all terms and conditions it was
16 | required to perform under the foregoing agreements.

17 | 93. As a proximate result of Defendant Davis' breach of the Davis – JLG
18 | Guaranty, Plaintiff Access has suffered damages in the amount of at least
19 | $5,210,952.

20 | <center>**SECOND CAUSE OF ACTION**</center>
21 | <center>**(Breach of JLG Guaranty --**</center>
22 | <center>**By Plaintiff JLG Against Defendant Davis)**</center>

23 | 94. The allegations of Paragraph 1 through 85 are incorporated by this
24 | reference.

25 | 95. Pursuant to the Davis – JLG Guaranty, Defendant Davis unconditionally
26 | and irrevocably guaranteed the full and prompt payment, performance and
27 | satisfaction by PHR of each and every obligation owing to Plaintiff JLG.

28 |

96.   PHR has defaulted on its obligation to pay the amounts due for the equipment and parts purchased and/or leased from JLG.

97.   Defendant Davis has breached the Davis – JLG Guaranty by failing and refusing to pay the amounts due for the parts and equipment it purchased or leased.

98.   Plaintiff JLG has fully performed all terms and conditions it was required to perform.

99.   As a proximate result of Defendant Davis' breach of the Davis – JLG Guaranty with respect to the parts and equipment, Plaintiff JLG has suffered damages according to proof.

## THIRD CAUSE OF ACTION

### (Breach of USB Guaranty --

### By Plaintiff Access Against Defendant Davis)

100.   The allegations of Paragraph 1 through 85 are incorporated by this reference.

101.   Pursuant to the Davis – USB Guaranty, Defendant Davis guaranteed the full, prompt, complete and final payment and performance of any and all obligations and liabilities of PHR to USB.

102.   The Davis – USB Guaranty states in part, "Guarantor hereby promises to pay Creditor when due, on demand, all indebtedness of any kind or nature emanating from the Agreements (including, without limitation, if an event of default shall occur under the Agreements, payment on demand of all unpaid sums to become due under the defaulted Agreements for the entire term thereof), whether now or hereafter arising; and Guarantor agrees to indemnity and hold Creditor harmless from and against any and all losses, liabilities and costs caused by or arising from (in any way, directly or indirectly) any failure of Obligor to fully, promptly and completely satisfy the Obligations."

103.   As a result of the USB Assignment, Plaintiff Access is Creditor and Beneficiary under the Davis - USB Guaranty.

104.   PHR has defaulted on its obligation to pay the amounts due under the USB Loans, the USB Master Loan Agreement, as amended, and the USB Schedules and is in default.

105.   Defendant Davis has breached the Davis – USB Guaranty by failing and refusing to pay the amounts due under the USB Loans, the USB Master Loan Agreement, as amended, and the USB Schedules.

106.   Plaintiff Access has fully performed all terms and conditions it was required to perform.

107.   As a proximate result of the breach of the Davis – USB Guaranty, Plaintiff Access has suffered damages according to proof.

## FOURTH CAUSE OF ACTION

### (Breach of DLL Guaranty --

### By Plaintiff Access Against Defendant Davis)

108.   The allegations of Paragraph 1 through 85 are incorporated by this reference.

109.   Pursuant to the Davis – DLL Guaranty, Defendant Davis as "Guarantor hereby unconditionally guarantees to Beneficiary and its successors and assigns (i) the due and punctual payment, to Beneficiary when due of all payment obligations and all other amounts coming due under the Agreement, including, without limitation, all indemnification payment, whether as a result of acceleration, maturity or otherwise, (ii) the full, prompt and unconditional performance of every obligation to be performed by Customer under the Agreement, and (iii) all expenses of obtaining or endeavoring to obtain payment or performance thereof or security therefor, or of enforcing this Guaranty, including attorneys' fees and other legal expenses."

110.   Paragraph 2 of the Davis – DLL Guaranty states in part, "Guarantor hereby agrees that if Customer shall fail to pay any amount due under the Agreement when and as the same shall be due and payable, or fails to perform any obligation

under the Agreement in a timely manner, Guarantor will cause such amount to be paid when and as the same shall be due and payable or cause such performance to be rendered in a timely manner in accordance with the terms of the Agreement, as if the same were paid or performed by Customer."

111.   Paragraph 8.2 of the Davis –DLL Guaranty states in part, "Guarantor acknowledges and agrees that Beneficiary may sell and transfer its ownership of the Equipment and its right and interest in the Agreement, and this Guaranty shall inure to the benefit of such successors in title to the equipment and Agreement."

112.   As a result of the DLL Assignment Agreement, Plaintiff Access is Beneficiary under the Davis – DLL Guaranty.

113.   PHR has defaulted on its obligation to make the payments due under the DLL Loans and DLL Inventory Agreement.

114.   Davis has breached the Davis – DLL Guaranty by failing and refusing to pay the amounts due under the DLL Loans and DLL Inventory Agreement.

115.   Plaintiff Access has fully performed all terms and conditions it was required to perform.

116.   As a proximate result of the breach of the Davis – DLL Guaranty, Plaintiff Access has suffered damages according to proof.

## FIFTH CAUSE OF ACTION

### (Breach of Flanagan Guaranty --

### By Plaintiffs Against Defendant Flanagan)

117.   The allegations of Paragraph 1 through 85 are incorporated by this reference.

118.   Pursuant to the Flanagan Guaranty, Flanagan as "Guarantor hereby unconditionally and irrevocably guarantees to each of the JLG Parties, and shall be responsible to each of the JLG Parties for, the full and prompt payment, performance and satisfaction by Obligor of each and every one of its obligation to any JLG Party, whether now in existence or arising on or after the date of this Guaranty, whether

1  absolute or contingent, and whether secured or unsecured, together with all fees and

2  charges of whatsoever kind and nature arising therefrom or relating thereto."

3      119.  The Flanagan Guaranty states: "It is specifically understood and agreed

4  that . . . the obligation of Guarantor hereunder is not conditional or contingent, but

5  rather absolute and immediate upon any amount due from Obligor not being paid, or

6  any obligation of Obligor not performed, when due, and that Guarantor shall make

7  any payments and undertake the performance of any obligations due to the JLG

8  Parties hereunder immediately and without delay."

9      120.  PHR has defaulted on its obligation to pay the amounts due under the

10  GE Loans and GE Agreements; the Wells Fargo Loans, the Access Master Lease

11  Agreement, and the Access Master Lease Schedules; the USB Loans, the USB

12  Master Loan Agreement, as amended, and the USB Schedules; and DLL Loans and

13  DLL Inventory Agreement.

14      121.  Defendant Flanagan has breached the Flanagan Guaranty by failing and

15  refusing to make the payments due under the GE Loans and GE Agreements; the

16  Wells Fargo Loans, the Access Master Lease Agreement, and the Access Master

17  Lease Schedules; the USB Loans, the USB Master Loan Agreement, as amended,

18  and the USB Schedules; and DLL Loans and DLL Inventory Agreement.

19      122.  Plaintiffs have fully performed all terms and conditions they were

20  required to perform.

21      123.  As a proximate result of the breach by Defendant Flanagan, Plaintiffs

22  have suffered damages in an amount of at least $5,210,952.

23

24                          **PRAYER FOR RELIEF**

25      WHEREFORE, Plaintiff requests an award of compensatory damages and entry

26  of judgment against Defendants jointly and severally as follows:

27      1.    In the amount of at least $5,210,952 as of May 27, 2011, plus interest

28  thereon.

---

21

**COMPLAINT FOR BREACH OF GUARANTY**

2.    For all charges, fees and other sums, costs and expenses associated with collection, including reasonable attorney's fees and costs pursuant to agreement.

3.    For such other and further relief as the court deems proper.

Dated: January 23, 2011              BRYAN CAVE LLP

By: _____
      Lawrence P. Ebiner
      Jon Fetterly
      Patrick J. Hagan
      Attorneys for Plaintiffs

22

**COMPLAINT FOR BREACH OF GUARANTY**

**EXHIBIT 1**
**Summary of Amounts Owed By Guarantors[1]**

| Lender | Exhibit | Contract/Note | Balance (As of 5/27/11) | Total Due |
|---|---|---|---|---|
| | | | | |
| **General Electric Capital Corporation** | | | | |
| | 4 | GE Master Security Agreement – 3/3/04 | | |
| | 5 | Promissory Note – 5/27/11 | 126,422 | |
| | 6 | Promissory Note – 11/23/05 | 108,895 | |
| | 7 | Promissory Note – 8/29/06 | 69,735 | |
| | 8 | Promissory Note – 7/31/07 | 453,450 | |
| | 9 | Promissory Note – 8/16/07 | 557,843 | |
| | 10 | Loan and Security Agreement – 5/29/09 | 352,360 | |
| | 11 | Promissory Note – 12/30/09 | 101,317 | |
| | | | | **1,770,026** |
| **Wells Fargo – Access Financial** | | | | |
| | 17 | Access Master Lease Agreement – 6/1/02 | | |
| | 18 | Master Lease Schedule 13 – 1/15/10 | 1,378,052 | |

---

[1] Excluding fees, costs of collection, certain interest, etc.

| Lender | Exhibit | Contract/Note | Balance (As of 5/27/11) | Total Due |
|---|---|---|---|---|
| | 19 | Master Lease Schedule 14 – 1/15/10 | 124,555 | |
| | 20 | Master Lease Schedule 15 – 1/15/10 | 1,413,471 | |
| | 21 | Master Lease Schedule 16 – 1/15/10 | 3,483,493 | |
| | 22 | Master Lease Schedule 17 – 1/15/10 | 711,043 | |
| | 23 | Master Lease Schedule 18 – 1/15/10 | 280,297 | |
| | 24 | Master Lease Schedule 19 – 1/15/10 | 619,079 | |
| | | | | **8,009,993** |
| **US Bancorp** | | | | |
| | 25 | USB Master Loan Agreement – 10/20/07 | | |
| | 26 | USB Schedule 1 – 10/30/07 (as amended) | 599,605 | |
| | 27 | USB Schedule 2 – 3/13/08 (as amended) | 1,049,085 | |
| | 28 | USB Schedule 3 – 3/30/08 (as amended) | 843,378 | |
| | | | | **2,492,069** |
| **DLL** | | | | |
| | 33 | Agreement for Inventory Financing – 6/12/04 | 1,434,560 | |
| | | | | **1,434,560** |